### McCREARY v. UNITED STATES.
### No. 11137.

Allan A. Bynon and Clifford G. Schneider, both of Portland, Or., for plaintiff.

J. Mason Dillard, Asst. U. S. Atty., and Gerald J. Meindl, Atty., Department of Justice, both of Portland, Or.

McCOLLOCH, District Judge.

At the opening of the trial of this case, it was brought to my attention that the case had previously been tried by a jury before Judge McNary, and that the judgment at the former trial, which was for the plaintiff, had been reversed by the Circuit Court of Appeals, which held that Judge McNary should have directed a verdict for the defendant. United States v. McCreary, 9 Cir., 61 F.2d 804.

At once the question occurred whether the plaintiff was entitled to a new trial, since the case had been fully tried on both sides before.

Upon examination of the mandate I found that the Circuit Court of Appeals had directed the trial court to take further proceedings "in accordance with the opinion and judgment of this Court." The files of the case disclosed that the Government had never moved for judgment of any kind on the mandate, nor had any judgment on the mandate been entered. By that time the jury in the present case had been impaneled, sworn and (as I recollect) the taking of testimony had begun.

I adjourned the trial until authorities could be examined to determine (1) whether under the mandate and on the situation that presented itself plaintiff was entitled to a second trial; (2) if plaintiff was entitled to a second trial, what judgment at this late date should be entered on the appellate court's mandate, if any.

 Plaintiff presented Slocum v. New York Life Insurance Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029, as controlling that plaintiff was entitled to a second trial. This was a five to four decision handed down in 1913, majority opinion by Justice Van Devanter, minority opinion by Justice Hughes. This case appeared to me to hold definitely that where decision on a motion for directed verdict was not reserved, that thereafter, after verdict and judgment for plaintiff and reversal by an appellate court, plaintiff was entitled to a new trial under the

District Court, D. Oregon.
March 5, 1938.

Seventh Amendment. The Government's attorneys suggested that this opinion had been qualified in later decisions by the Supreme Court, also that there were distinguishing features in the case under trial. It seemed to me, however, that Slocum v. New York Life Insurance Co. controlled the present case in all respects, particularly since the Circuit Court of Appeals on the prior reversal of this case had not ordered that judgment be entered for the Government. I therefore directed the trial to proceed and later in the case, and before submission to the jury, directed that the former judgment for plaintiff be set aside.

■ At the conclusion of the testimony on both sides the Government again moved for a directed verdict, as it had done in the former trial before Judge McNary. I reserved decision on the motion for two reasons: (1) I felt that two trials of this case was enough, and, if verdict and judgment should go again for plaintiff and be reversed by the Appellate Court, that the record should this time be brought within the rule laid down in Slocum v. New York Life Insurance Co., so that the appellate court (in the event of a second reversal on the facts) could direct final judgment against the plaintiff; (2) I was not certain as to the merit of the government's contention that it was entitled to a directed verdict. I recognized that I was bound by the former decision of the Circuit Court of Appeals on the facts as presented to it on appeal from the first trial, but counsel for plaintiff strenuously insisted that at this trial they had cured the defects in the former record, and I felt that it would be necessary for me to compare the entire record in the former case with the new record, before I could pass on this question. In the midst of the trial, time did not permit this comparison, and I therefore submitted the case to the jury, which again returned a verdict for the plaintiff. Upon receipt of the verdict, the Government moved for judgment in its favor, but for the same reasons given above (the transcript of testimony not yet being available) I was still not prepared to pass on the question of the sufficiency of plaintiff's case, and I therefore entered judgment for the plaintiff on the verdict.

No motions were made by the Government's attorneys against the judgment, and I therefore later, on my own motion, asked the attorneys on both sides to present their views in oral argument on the sufficiency of plaintiff's case, and I asked that the argument be particularly directed to the question whether the plaintiff at the second trial had met the objections raised in the former opinion of the Circuit Court of Appeals.

■ Having had the benefit of this argument and of briefs since filed by both sides, I have now compared the written transcript of both trials (Mr. Meindl of Government's counsel kindly having furnished me the Government's copy of the testimony taken in the present case), and I now express it as my opinion that the plaintiff at the new trial presented a case stronger in many respects than the one made at the former trial, and that plaintiff's case, thus strengthened, was entitled to submission to the jury, and that it would have been error on my part to have allowed the Government's motion for a directed verdict.

Among other important additions made to plaintiff's case at the second trial were the Government hospital records. These reports covered hospitalization more than a dozen times over a large number of years. To me, they were an impressive picture of this man's broken health, dating from his first attack of acute dysentery while in action in France. Government counsel point out that not until 1928 (according to the hospital records) were amœbiasis or giardia found in the plaintiff's stool, and there is the usual conflict among the doctors testifying in this case as to whether plaintiff's dysentery is incurable.

I feel impelled to take what seems to me the unavoidable, practical view of the case. Here was a man of fine physique and perfect health who entered service early with the Marine Corps. He participated in all of the hard fighting which the Marines saw, beginning with Belleau Wood in July, 1918, later at Soissons, then at St. Mihiel, and later in the Champagne. He was attacked by acute dysentery in August, but remained in service until his discharge from the Army of Occupation the following August (1919). His story is one of continuous ill health from the time of the first dysentery attack. From then on he dragged his way through the rest of the war, and since his life has been a constant experience of endeavoring earnestly, but unsuccessfully, to pursue gainful employment. I saw the veteran on the witness stand, and I believed his story, and I repeat it as my opinion that he presented a case for the jury, entirely apart from the conflicting medical testimony.

I feel that too little consideration has been given by the Government to the plaintiff's shattered nervous system. It is evident to me that the terrific experiences in the actions in which plaintiff took part as a member of the historic Marine Corps gravely and permanently impaired his nervous system. Plaintiff's own account of his work record, fully corroborated by his employers, convinced me that at no time since his discharge has he been able to continue gainful employment for any substantial period, although he has valiantly endeavored to do so. In my opinion, this condition is permanent and has been since he left his country's service.

As further indication that the case was tried more thoroughly at the second trial than on the first, I call attention that the transcript at the second trial comprises 378 pages, as against 168 pages for the first trial. Plaintiff's own testimony at the second trial covers 167 pages. At the first trial it covered but 46 pages.